**TRACY LEIGH DEVELOPMENT CORPORATION, Appellant**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

No. 73-2081

United States Court of Appeals
Third Circuit

Argued April 25, 1974

Filed June 25, 1974

Charles S. Waggoner, II, Esq., St. Thomas, V.I., *for appellant*

Gordon S. Gilman, Esq., Assistant Attorney General, St. Thomas, V.I., *for appellee*

Before ALDISERT, ADAMS and GARTH, *Circuit Judges*

## OPINION OF THE COURT

ADAMS, *Circuit Judge*

Resolution of this case turns primarily on the willingness or power of this Court to correct an alleged "drafting oversight" by the Virgin Islands legislature in enacting a statute that conferred certain specified categories of tax relief.

The appellant, Tracy Leigh Development Corp. ("Tracy Leigh") contends vigorously that it is our province, and indeed our duty, to supply a term to the Virgin

Islands Code which, it is asserted, the draftsmen unintentionally omitted. Standing in sharp counterpoint to this contention are doctrines of judicial temperance, doctrines which take on a heightened significance when the elemental relationship of courts to legislatures is put in issue.

## I.

The facts of the case have been stipulated by the parties. Tracy Leigh was incorporated under the laws of the Virgin Islands on February 24, 1967. On June 23, 1967, Tracy Leigh purchased about four acres of land on St. Thomas, for approximately $130,000.[1] On October 26, 1967, the corporation applied for a grant of "tax or fee exemptions and subsidies" under the Virgin Islands Industrial Incentive Act.[2] A public hearing on the application was held on December 14, 1967, and an executive committee of the Industrial Incentive Board approved the application on February 11, 1969.[3] The grant was made effective from October 26, 1967, the date of the application, for a period of ten years. Subsequently, in 1970, the Government of the Virgin Islands refused to pay Tracy Leigh the subsidies provided for in the grant, declined to recognize any of the tax exemptions conferred by the grant, and filed a lien against Tracy Leigh for taxes owed.[4] The Government's failure to comply with the terms of the grant reflected a recommendation by the Comptroller of the Virgin Islands to the Governor that "no subsidy payments be made under this grant" and "that any taxes or fees exempted under

---

[1] The original capital stock of Tracy Leigh was issued in exchange for the land. The land was valued at $130,000. and was described as "parcels Nos. 8-1-2 and 8-56-1, Estate Nazareth, No. 1 Red Hook Quarter, St. Thomas, Virgin Islands."

[2] 33 V.I.C. § 4001 et seq.

[3] The grant was approved and signed into effect by Governor Ralph M. Paiewonsky on February 11, 1969.

[4] Under the Act, a grantee is entitled to exemption from real property taxes, excise taxes, and certain license fees. See 33 U.I.C. § 4061. However, Tracy Leigh seeks here only a refund of real property taxes.

this grant be billed and collected, and that the grant be voided."[5]

Under protest Tracy Leigh paid the asserted tax deficiency, and then brought this lawsuit in the district court. It sought a declaration of the validity of the exemption and subsidy grant, a payment of the subsidies, and a refund of the taxes it had paid under protest.

The Government, in defending the suit, asserted that the tax exemption and subsidy grant exceeded the terms of the authorizing statute. The district court declared the grant void as not supported by the terms of the statute, and Tracy Leigh has appealed.

## II.

The Virgin Islands Industrial Incentive Act was enacted by the Islands' legislature "to promote the economic development of the Virgin Islands by the offering of certain incentives to the establishment or expansion of industries or businesses."[6] The Incentive program was repealed in July of 1972.[7] As of September 25, 1967, the Act provided in part as follows:

"A person, firm, or corporation engaged in or about to engage in an industrial or business activity in the Virgin Islands, which industrial or business activity in the judgment of the Governor of the Virgin Islands, will promote the public interest by economic development of the Virgin Islands, may apply for the [tax exemption and subsidy] if such person, firm, or corporation meets the following requirements:

. . . (3) undertakes to invest in an industry or business in the Virgin Islands. . . .

(B) at least $75,000 in the establishment of a business engaged in the ownership of housing projects . . . , factories, indus-

---

[5] Stipulation No. 11. The letter containing the recommendation was sent to Governor Melvin H. Evans by the Comptroller, under date of April 2, 1970.

[6] 33 V.I.C. § 4001.

[7] Act No. 3263, § 4, Sess. L. 1972, p. 220.

trial plants, or commercial warehouses, industrial parks, *condo-minium(s)* . . . , including the *actual construction of such housing projects, factories, industrial plants or commercial warehouses, industrial parks* when such construction is engaged in by the owner." (Emphasis added.)[8]

It is conceded by the parties that Tracy Leigh was engaged in the "construction" of condominiums. Indeed, the tax exemption and subsidy form reflects that the award to Tracy Leigh was predicated on the corporation's intended "construction and sale to first buyer of condominium units."[9] The Government, in seeking to justify the voiding of the grant, points out what is plain: that in authorizing grants to those engaged solely in "construction," the legislature did *not* include condominiums among the facilities for which construction grants could be given. Tracy Leigh, the Government urges, was thus not entitled to any grant for the construction of condominiums and, since condominium construction was the precise and express basis for Tracy Leigh's tax exemption and subsidy, the grant was void ab initio.

■ Tracy Leigh's central contention is that the failure of the legislature to include condominium construction among those activities for which exemptions and subsidies might validly be granted, was an "obvious drafting oversight." In support of this contention we are pointed to an earlier version of the authorizing statute, enacted a few months prior to the amendment of September 25, 1967.[10] The earlier statute, after listing condominiums among the facilities for which "ownership" grants could be given,

---

[8] 33 V.I.C. § 4041 (3) (B).

[9] District Court Exhibit 2, App. 7.

[10] The amendment of September 25, 1967, was Act No. 2062. The language set out above (see text accompanying Note 8, supra) is as amended September 25, 1967. The earlier amendment was Act No. 2028, July 11, 1967.

further authorized grants for "construction or operation of *the same*."[11] This terminology, beyond doubt, meant that exemptions and subsidies could validly issue under the earlier version of the Act for the construction of condominiums.

However, in the September 25th amendment the legislature did not use the phrase "the same". Instead, the legislature undertook a specific enumeration of all those types of facilities for which *construction* grants were authorized. This enumeration tracked the listing of valid *ownership* grants, with the single exception of condominiums. Tracy Leigh maintains that, when read against the earlier enactment, the omission from the September 25th amendment of an authorization of grants for construction of condominiums was clearly an unintended omission—an "oversight"—by the legislature. We are asked to rectify that oversight by supplying the missing term, and so uphold the validity of Tracy Leigh's grant.

■■ This we decline to do. We take it as a tenet of our jurisprudence that "[a] judge must not rewrite a statute, neither to enlarge nor to contract it."[12] At base, this adage is expressive of the fundamental separation between the judiciary and the legislature in our system. Where a statute is on its face clear, strict, literal interpretation renders a federal court functus officio. Departure from the plain import of statutory terms is justified only where terminological ambiguity is apparent,[13] where inherent contradiction exists,[14] or, perhaps, where the legislative history conclusively establishes that an oversight in draftsmanship

---

[11] Act No. 2028, July 11, 1967. (Emphasis added.)

[12] Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 533 (1947).

[13] Id.

[14] Id.

has clearly occurred.[15] None of these situations obtains here. Despite Tracy Leigh's assertion that the legislature fully intended to authorize grants for the construction of condominiums, not a single fragment of legislative history —except perhaps the above-mentioned predecessor of the applicable statutory section—has been brought to our attention indicating that the legislature intended to authorize grants for the construction of condominiums.

Indeed, we hesitate to adopt Tracy Leigh's characterization of the omission from the statute of condominium construction grants, as "obvious". For reasons that may have been perfectly rational, the legislature may have intended *precisely* what Tracy maintains was unintended. Under the Incentive Act, "condominium" was a statutory term of art. It meant "the *ownership* of single units in a multi-unit building with common elements."[16] Inasmuch as the legislature promulgated an express definition of "condominium", we think it somewhat unlikely that the lawmakers would simply neglect to include that term in the grant authorization section of the same Act. At any rate, the reason for the omission of the term "condominium" in the grant section of the Act is considerably less clear than Tracy Leigh would have us conclude.

■■ Additional considerations militate against judicial insertion of an allegedly "missing" word into this section of the Act. As Judge Maris has pointed out:

"It is a well settled rule that statutory exemptions from taxation, being a matter of grace, are to be strictly and narrowly construed."[17]

---

[15] Cf. Rogers C. B. Morton v. Delta Mining, Inc., No. 73-1752 (3d Cir., March 20, 1974), slip op. at 7; Schiaffo v. Helstoski, No. 72-2167 (3d Cir., Jan. 4, 1974), slip op. at 25, 26; PBW Stock Exchange, Inc. v. SEC, 485 F.2d 718, 739 (Adams, J., dissenting); Giuseppi v. Walling, 144 F.2d 608, 624 (2d Cir. 1944) (L. Hand, J., concurring).

[16] 28 V.I.C. § 901(i). This statutory definition of "condominium" was incorporated by reference into the grant authorization section of the Incentive Act, by Act No. 2062, supra Note 10.

[17] King Christian Enterprises, Inc. v. Government of the Virgin Islands, 345 F.2d 633, 637 (3d Cir. 1965).

251

This rule, when compounded with the precept that "to supply [statutory] omissions transcends the judicial function,"[18] makes the present case—a case involving a tax exemption—a particularly inappropriate occasion for judicial tampering with the clear language of a statute. Thus, we conclude that the grant to Tracy Leigh was ultra vires the statutory authorization, and therefore invalid.

■ Tracy Leigh mounts a second argument against the district court's judgment. It maintains that, in reliance upon the Government's initial approval of the grant, Tracy Leigh "changed its position" and "gambled on building and selling the first condominiums constructed in the Virgin Islands."[19] Notwithstanding that this is part of a stipulation, we think it of limited significance. First, it is conceded that Tracy Leigh bought the land for the condominiums in question well before the approval of the tax exemption and subsidy.[20] The purchase involved a substantial risk; this risk cannot be deemed to have been undertaken in "reliance" on a grant that had not yet been made.[21] Moreover, another brace of venerated principles dictate that:

". . . [C]ontracts with agents of the Government must be in strict conformity with the [statutory] authority conferred . . . . The Government is neither estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit."[22]

Thus, even were we of the opinion that, under some circumstances, Tracy Leigh's "reliance" on the grant might have

---

[18] Iselin v. United States, 270 U.S. 245, 251 (1926).

[19] Stipulation No. 14.

[20] To reiterate, the land was "purchased" for Tracy Leigh shares on June 23, 1967, and the grant was not approved until February 11, 1969.

[21] In addition, the Government in its answer points out that Tracy Leigh had spent over a half-million dollars on the condominium project well before the grant was approved. This indicates, claims the Government, that "a definite decision to proceed with construction had been reached long before the date of application."

[22] In re Hooper's Estate, 359 F.2d 569, 577 (3d Cir. 1966).

252

been significant, it cannot overcome the fact that the grant was not authorized under Virgin Islands law. The district court was therefore entirely justified in refusing to enforce the terms of the grant.

It may be argued that the general objective of the Industrial Incentive program might have been furthered somewhat by judicial enforcement of the grant to Tracy Leigh. Nonetheless, we are always loathe to substitute our own notions of how best to administer a legislative program, when the legislature itself has set out the guidelines.[23] The general inhibition against the "rewriting" of statutes is reinforced here by the fact that a tax-exemption statute is involved. In these circumstances, strict adherence to the literal terms of the statute would appear to be the appropriate course.

■ There is some suggestion by Tracy Leigh that, irrespective of our interpretation of the "construction" section of the Incentive Act, we should still deem Tracy Leigh's tax exemption and subsidy grant to be valid and enforceable. This argument is grounded on the proposition that, before it could sell any of the condominium units it had planned to construct, Tracy Leigh would perforce *own* such units. Therefore, the contention goes, Tracy Leigh's grant was technically authorized by the "ownership" provision of the Act.[24] It is on this point that the dissent agrees with Tracy Leigh.

This final argument overlooks the fact that Tracy Leigh's tax exemption and subsidy grant was explicitly tailored to reward only the "construction" of condo-

---

[23] See Rogers C. B. Morton v. Delta Mining, Inc., supra, at 10. Ordinarily, we might consider the Comptroller General's interpretation of the Act to be entitled to great weight. Cf. Udall v. Tallman, 380 U.S. 1, 16 (1965). However, since the Industrial Incentive Board apparently construed the Act *in favor* of Tracy Leigh, we do not invoke here the principle that courts should "show great deference to the interpretation given [a] statute by [those] charged with its administration." Id.

[24] See text accompanying Note 8, supra.

miniums, an enterprise for which, as we have seen, the legislature did *not* authorize such grants. Moreover, the "ownership" section of the statute authorized grants to "business[es] engaged in the ownership of . . . condominiums." Even conceding the fact that at some point in time Tracy Leigh was technically an owner, it can hardly be said that the corporation was "engaged" in the "business" of owning condominiums. The language of Tracy Leigh's grant reflected that the corporation intended to engage in the "construction and sale to first buyer of condominium units . . . ," not the continued ownership of such units. Moreover, we note that the statute, in authorizing certain construction grants, seeks to insure that such "construction is engaged in by the owner."

Accordingly, the judgment of the district court will be affirmed.

---

GARTH, *Circuit Judge* concurring in part and dissenting in part.

I agree with the majority that Tracy Leigh is not entitled to subsidies arising from the actual *construction* of condominiums.[1] I disagree with and hence dissent from the majority to the extent that its affirmance of the District Court judgment, precludes Tracy Leigh from "ownership" subsidies.

Act No. 2062 (33 V.I.C. § 4041(3)(B))[2] provided for

---

[1] Tracy Leigh itself no longer claims such benefits. (Appellant's Supplemental Brief p. 1). See also n. 4 Majority Opinion: ". . . However, Tracy Leigh seeks here only a refund of real property taxes." As is pointed out in the text of this dissent, my reading of the complaint would indicate that Tracy Leigh seeks *both* a refund of real property taxes and a subsidy of percentage of income taxes for the particular years in question.

[2] 33 V.I.C. § 4041(3)(B), as amended, provided:

A person, firm, or corporation, engaged in or about to engage in an industrial or business activity in the Virgin Islands, which industrial or business activity, in the judgment of the Governor of the Virgin Islands will promote the public interest by economic development of the Virgin

two separate categories eligible for tax subsidies or exemptions: (1) *ownership*, and (2) *actual construction. Ownership* applied to (1) housing projects, (2) factories, (3) industrial plants, (4) commercial warehouses, (5) industrial parks, and (6) *condominiums* (as defined in Chapter 33, Title 28, Virgin Islands Code) for the *occupancy of others* (emphasis supplied). Actual construction applied to (1) housing projects, (2) factories, (3) industrial plants, (4) commercial warehouses, and (5) industrial parks.

The subsidies pertinent to "ownership" are real property taxes and fees (33 V.I.C. § 4061(a)(1), (3)) and a percentage of income tax liability (33 V.I.C. § 4071 (a)(2)). On the other hand, the subsidies relevant to construction activities are excise taxes on materials and equipment (33 V.I.C. § 4061(a)(2)) and a percentage of import duties and taxes paid on imported materials used in construction (33 V.I.C. § 4071(a)(1)). The relevant portions of these statutes are reprinted in the margin below.[3]

---

Islands, may apply for the same [tax exemption], if such person, firm, or corporation meets the following requirements:

\* \* \*

(3) undertakes to invest in an industry or business in the Virgin Islands. . . .

(B) at least $75,000 in the establishment of a business engaged in the ownership of housing projects . . . factories, industrial plants, or commercial warehouses, industrial parks, condominium as defined in Chapter 33, Title 28 Virgin Islands Code for the occupancy of others, including the actual construction of such housing projects, factories, industrial plants or commercial warehouses, industrial parks when such construction is engaged in by the owner.

This statute, operative at all times relevant to the instant case, has since been repealed.

[3] 33 V.I.C. § 4061 provided, in part, that:

(a) Each person, firm or corporation granted a certificate of tax exemption and subsidy benefits as hereinafter provided shall be exempt for a period of 10 years from the payment of the following taxes and fees:

(1) All taxes on real property to the extent that the same is utilized in the industrial or business activity with respect to which a tax exemption certificate has been granted.

(2) All excise taxes on building materials, tools, pipes, pumps, conveyor belts or other appliances and materials necessary for use in the construction, alteration, reconstruction or extension of the physical plant, or any extension thereof.

(3) All annual or specific license fees, except liquor license fees and

The majority opinion deals mainly with the issue of construction subsidies despite what is to me a very evident abandonment by Tracy Leigh of its claim to the excise taxes and import duty subsidies relevant to "construction". As I understand the Complaint, Tracy Leigh presently claims subsidies for having, in the first instance, established a business (condominiums) in the Virgin Islands, and for having maintained ownership of the condominiums until it sold the first 42 units built.

The grant of tax exemption and subsidies reads in pertinent part:

"WHEREAS, on October 26, 1967, the Virgin Islands Industrial Incentive Board received from Tracy Leigh Development Corporation . . . an application for tax exemption and subsidies pursuant to the Provisions of the Code, as aforesaid, covering THE CONSTRUCTION AND SALE TO FIRST BUYER OF CONDOMINIUM UNITS AT ESTATE NAZARETH, ST. THOMAS, V.I., and,

WHEREAS, it has been determined that the required financial investment in the business or industry was completed by the

---

automobile license fees; Provided, however, that in the case of a person, firm or corporation engaged in other industrial or business activity for which a certificate has not been granted, the full amount of all annual or specific license fees shall remain payable with respect to such nonexempt activity.

        *        *        *

33 V.I.C. § 4071 provided, in part, that:

(a) In addition to the foregoing benefits a person, firm or corporation granted a certificate of tax exemption and subsidy benefits as hereinafter provided shall be entitled for a period of 10 years to the following benefits, as determined in accordance with the provisions hereof:

(1) A non-taxable subsidy equal to 90% of the amount (without deduction of administrative costs of collection) of import duties and other taxes paid into the Treasury of the Virgin Islands on raw materials brought into the Virgin Islands by such person, firm, or corporation for the purpose of producing or creating an article, goods or commodity as a result of industrial or manufacturing processing.

(2) A non-taxable subsidy equal to 75% of the income tax liability paid to the Government of the Virgin Islands during the taxable year. . . . In the computation of the non-taxable subsidy in the case of any person, firm or corporation under the provisions of this subparagraph, there shall not be considered as part of the base for such subsidy the taxes paid into the Treasury of the Virgin Islands on any income of such person, firm or corporation which is derived from sources within any of the states of the United States.

        *        *        *

These statutes, operative at all times relevant to the instant case, have since been repealed.

256

applicant on February 11, 1969, and that the applicant otherwise qualifies under the provisions of this title, and will promote the public interest by economic development of the Virgin Islands; and,

*     *     *

NOW, THEREFORE, BE IT DECREED by the Governor of the Virgin Islands, that the Grantee, Tracy Leigh Development Corporation is hereby granted tax or fee exemption and subsidies, in the name of the Government of the Virgin Islands, in accordance with the provisions of the Code, as aforesaid, covering THE CONSTRUCTION AND SALE TO FIRST BUYER OF CONDOMINIUM UNITS AT ESTATE NAZARETH, ST. THOMAS, V.I. the said grant being for a period of ten (10) years."

*     *     *

While it is true that the grant does not refer in specific terms to "the establishment of a business," nevertheless it is inconceivable to me that a grant for Construction and Sale does not have implied within it both the facts of ownership and the "establishment of a business."

The government's position, taken at oral argument and in its brief, is that the "ownership" portion of the grant refers only to the owner of the condominium once the condominium has been purchased from Tracy Leigh. I cannot subscribe to such an argument, for it would mean that in order to qualify for such exemptions or subsidies, an individual purchaser would have had to expend at least $75,000 in the purchase of his condominium. In addition, he would have to be regarded as having "established a business" by his purchase, even though he was the resident and occupant of the condominium unit.

If we were to adopt the appellee's argument and construe the statutes as both the appellee and the majority would apparently have us do, it would appear that: (1) the developer, Tracy Leigh, having established a business of condominiums for sale, could not obtain a subsidy; and (2) the individual who purchased the condominium for

257

residence could not obtain a subsidy. The question is then presented: why specifically include in that portion of the statute referring to the "establishment of a business," the term "condominium" and then advocate a construction of that statute making it impossible for any exemptions or subsidies to be afforded thereunder?

There can be no doubt but that Tracy Leigh was fully qualified under the statute and grant as an owner, and as a corporation engaged in the business of owning condominiums which it then sold. During the period when it owned such a business (which it had established and in which it had made the requisite capital investment), it is entitled to ownership subsidies and tax exemptions as granted and as claimed.

I would reverse the judgment of the District Court.