TEMPLE UNIVERSITY—Of the Commonwealth System of Higher Education, Appellant,

v.

UNITED STATES of America.

No. 84–1416.

United States Court of Appeals, Third Circuit.

Argued April 29, 1985.

Decided July 22, 1985.

Robert R. Batt (argued), Louis W. Ricker, Bonnie S. Brier, Helene G. Bradley, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Jonathan S. Cohen, Michael J. Roach (argued), Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee; Edward S.G. Dennis, Jr., U.S. Atty., Philadelphia, Pa., of counsel.

Before SEITZ, WEIS and ROSENN, Circuit Judges.

### OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents the narrow but difficult question of whether taxpayers are exempt from Federal Insurance Contributions Act (FICA) taxation on amounts paid prior to January 1, 1984, pursuant to salary reduction agreements, for the purchase of retirement annuities qualifying for income tax deferral. The issue arises in connection with a refund suit instituted by the taxpayer, Temple University, to recover $690,584.07 in FICA taxes paid during the taxable years 1979 through 1982, inclusive, on monies which its employees had agreed to apply to the purchase of retirement annuities qualifying for income tax deferral under 26 U.S.C. § 403(b). The district court, finding neither statutory nor judicial

support for plaintiff's position, held that plaintiff was not entitled to a refund, 595 F.Supp. 94. We affirm.

## I.

The facts of this case are not in dispute. The plaintiff is an institution of higher education and part of the Commonwealth System of Higher Education of Pennsylvania. It is organized and operated as a nonprofit corporation and is exempt from federal income tax under section 501(a) and section 501(c)(3) of the Internal Revenue Code. 26 U.S.C. §§ 501(a), (c)(3). As an organization described in section 501(c)(3), the plaintiff established an annuity plan for its employees under section 403(b) of the Code.[1] 26 U.S.C. § 403(b). The plan operated throughout the taxable years involved in this case. Under the plaintiff's plan, employees desiring to purchase nonforfeitable, nontransferable retirement annuity contracts agreed to accept a salary reduction amounting to a specified percentage of their compensation. These deductions were then applied, along with supplemental contributions from the employer, to the purchase of the retirement annuities. An employee could execute only one such agreement in any year. Each agreement, legally binding and irrevocable, applied only to compensation earned after its effective date and during its term.

During the taxable years involved in this case, 1979 through 1982, inclusive, the plaintiff included the deductions from its employees' pay under these salary reduction agreements in computing the amount of their "wages" for purposes of the payroll tax under FICA. Plaintiff paid the FICA taxes on the amounts so withheld. This construction of the withholding requirement conformed to Rev.Rul. 65–208, 1965–2 C.B. 383, which required the inclu-

sion of amounts withheld pursuant to a salary reduction agreement in the employee's taxable wage base for purposes of the FICA tax, even though the amounts so withheld were excluded from the employee's federal taxable income pursuant to section 403(b) of the Code.

On June 8, 1981, the Supreme Court decided *Rowan Companies v. United States,* 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981). In *Rowan,* the Court held that "wages" must be consistently interpreted for income tax withholding and FICA purposes. *Id.* at 263, 101 S.Ct. at 2297. Subsequent to the *Rowan* decision, the plaintiff filed timely claims for refund of the employer taxes it paid based on the salary reduction amounts held includable in the FICA wage base under Rev.Rul. 65–208. The plaintiff also sought a refund of the taxes paid in behalf of its employees and withheld from their wages. The Commissioner rejected completely the plaintiff's claims for refund and the plaintiff thereupon timely filed this suit. Both parties moved for summary judgment.

The district court granted the Government's motion for summary judgment. The court held that Rev.Rul. 65–208 correctly construed the relevant statutory provisions and that it comported with congressional policies against permitting individuals to control the portion of their compensation which was to be included in the Social Security FICA wage base. It rejected the plaintiff's contention that the decision of the Supreme Court in *Rowan* required that the salary reduction amounts involved in this case be treated consistently for income tax and FICA purposes. The court concluded that such salary reductions were not excluded from the FICA wage base merely because they were excluded from taxable

---

1. 26 U.S.C. § 403(b) permits § 501(c)(3) organizations (certain nonprofit corporations operated exclusively for religious, charitable, and educational purposes, etc.) or public schools to contribute toward a retirement annuity for employees without the imposition of a tax at the time of contribution even in the absence of a qualified plan. Amounts contributed are excludable from the gross income of the employee to the extent of the applicable "exclusion allowance," generally 20 percent of his includable income multiplied by the number of years of service and diminished by employer contributions for annuity contacts which were excluded in any prior taxable year. The employee must, in the year of receipt, include in his gross income the amount ultimately received under the annuity contract.

income for income tax purposes under section 403(b), noting that in subsequent legislation Congress had codified the rule embodied in Rev.Rul. 65–208. "Congress," stated the district court, "[has] specifically rejected the language in *Rowan.*" From this adverse judgment, Temple University appeals.

## II.

■ The inclusion of salary reductions, made for the purchase of retirement annuities, in the taxable wage base for purposes of levying FICA taxes presents a question of law that is fully reviewable on appeal. *Cf. Struble v. New Jersey Brewery Employees' Welfare Trust Fund,* 732 F.2d 325, 330 (3d Cir.1984) ("Our review of the district court's grant of summary judgment is plenary.").

Plaintiff relies on two independent and distinct grounds in support of its position that the salary reductions contributed by plaintiff for the purchase of retirement annuities for its employees were not subject to FICA tax. Its principal reason is that during the years at issue, section 3121(a)(2) of the Code statutorily exempted such salary reductions from tax. The alternative basis is that the Supreme Court's 1981 decision in *Rowan* requires, in the absence of express congressional intent to the contrary, that both the income tax and FICA tax provisions be similarly interpreted. We consider each of these grounds in turn.

### A.

■ Section 3121(a) of the Code, 26 U.S.C. § 3121(a), defines "wages" subject to FICA taxes. This section, as applicable to amounts paid prior to January 1, 1984, *excluded* from the definition of "wages":

the amount of any payment (including any amount paid by an employer for insurance or ammuities, or into a fund, to provide for any such payment) made to, or on behalf of, an employee or any of his dependents under a plan or system

established by an employer which makes provision for his employees generally . . . on account of—

(A) retirement. . . .

26 U.S.C. § 3121(a)(2). Plaintiff argues that this exclusion covers both the salary reductions and the salary supplements. The Government, on the other hand, takes the position that only the salary "supplements" are excluded, and this case involves a salary *reduction* agreement.

The Government's position is directly supported by Rev.Rul. 65–208, 1965–2 C.B. 383, and its consistent application since its adoption in 1965. In this revenue ruling, the Internal Revenue Service has taken the position that amounts withheld pursuant to a salary reduction agreement are includable in the employee's taxable wage base for FICA tax purposes, even though the sums so withheld are excluded from the employee's federal taxable income pursuant to section 403(b) of the Code. That Congress saw Rev.Rul. 65–208 as the properly applicable law during the period in question is suggested by statements made in the legislative history of the Social Security Amendments of 1983 (the "1983 Act"), Pub.L. No. 98–21, 97 Stat. 65. In relevant part, this Act explicitly incorporated Rev.Rul. 65–208 into the Code.[2] Congress, in amending the law in this manner, saw itself merely codifying the prior law as articulated in Rev. Rul. 65–208. This is seen in the Senate committee report:

The bill also provides that any amounts paid by an employer to a tax-sheltered annuity by reason of a salary reduction agreement between the employer and the employee would be includible in the employee's social security wage base. *The committee intended that the provision would merely codify the holding of Revenue Ruling 65–208, 1965–2 Cum.Bull. 383. . . .*

S.Rep. No. 23, 98th Cong., 1st Sess. 41, *reprinted in* 1983 U.S.Code Cong. & Ad. News 143, 182 (emphasis added).

---

**2.** As will be discussed later, *see infra,* the Act also overruled the broad holding of the *Rowan*
decision.

Moreover, the legislative history of the 1983 Act also reflects the long-standing congressional intent to restrict the forms of compensation excluded from the FICA wage base. As stated in the Senate report;

Under cash or deferred arrangements, certain tax-sheltered annuities, certain cafeteria plans, and eligible State deferred compensation plans, the employer contributes funds which are set aside by individual employees for individual savings arrangements, and thus, the committee believes that such employer contributions should be included in the FICA base, as is the case for IRA contributions. Otherwise, individuals could, in effect, control which portion of their compensation was to be included in the social security wage base. This would make the system partially elective and would undermine the FICA tax base.

*Id.* at 40, 1983 U.S.Code Cong. & Ad.News 181. This report further supports the position that Congress, in the 1983 Act, was merely attempting to codify the pre-*Rowan* law, embodied in Rev.Rul. 65–208.

Common sense also supports the pre-*Rowan* applicability of Rev.Rul. 65–208, and the resulting conclusion that section 3121(a) of the Code applied only to the salary supplements. FICA taxes fund a national system of social insurance that supports important and extensive social security and medicare health programs. The purpose and use of FICA funds, then, differ markedly from the objectives underlying the federal income tax system. As stated by the Senate:

The social security program aims to replace the income of beneficiaries when that income is reduced on account of retirement and disability. Thus, the amount of "wages" is the measure used both to define income which should be replaced and to compute FICA tax liability. Since the security system has objectives which are significantly different from the objective underlying the income tax withholding rules, the committee believes that amounts exempt from income tax withholding should not be exempt from FICA unless Congress provides an explicit FICA tax exclusion.

*Id.* at 42, U.S.Code Cong. & Ad.News 1983, 183. Congress has provided no explicit FICA tax exclusion for the salary reduction amounts at issue here. Thus, there is ample justification for Rev.Rul. 65–208's differing treatment of such deductions for purposes of FICA on the one hand and federal income tax on the other.

The plaintiff presents several grounds, independent of *Rowan*, for challenging the rule established in Rev.Rul. 65–208. For example, the plaintiff relies on Treas.Reg. § 31.3121(a)(2)–1(d) which provides:

It is immaterial for purposes of this exclusion [from FICA tax of contributions made by an employer on behalf of an employee pursuant to a retirement plan] whether the amount or possibility of such benefit payments is taken into consideration in fixing the amount of an employee's remuneration or whether such payments are required, expressly or impliedly, by the contract of service.

The Government counters by arguing that this regulation reflects not an explicit salary reduction agreement, but rather the treatment of employee retirement benefits in a collective bargaining agreement. Benefits paid by employers under collective bargaining agreements are not treated as paid under salary reduction agreements within the meaning of Rev.Rul. 65–208. Hence, they are not regarded as part of the taxable wage base of the employees for FICA purposes. The plaintiff also relies on Rev.Rul. 181, 1953–2 C.B. 111. This revenue ruling, however, was specifically distinguished in Rev.Rul. 65–208 on the ground that the employer made the contribution involved from its own funds and not under a salary reduction plan.

■ Even if the foregoing analysis were rejected, and section 3121(a) is seen as applicable to salary reductions, the result is the same. This is due to the amendments found in the 1983 Act—amendments that, in the event the plaintiff's position regarding section 3121(a) has merit, should be seen as having retroactive application. The

1983 Act contained numerous provisions concerning FICA coverage and taxation. Some of the amendments were enacted in reaction to the Supreme Court's *Rowan* decision. Congress, in section 327(b)(1) of the 1983 Act, Pub.L. No. 98–21, § 327(b)(1), 97 Stat. 65, 127, sought to extricate the Treasury from the requirement that the definition of "wages" or FICA purposes be interpreted in the same manner as the definition of "wages" for income tax withholding purposes. The "decoupling" provision of the 1983 Act reads as follows:

> Nothing in the regulations prescribed for purposes of chapter 24 (relating to income tax withholding) which provides an exclusion from "wages" as used in such chapter shall be construed to require a similar exclusion from "wages" in the regulations prescribed for purposes of this chapter.

Section 327(b)(1) of the 1983 Act (codification is found following § 3121(a)(20) of the Code).

The 1983 Act also amended the section 3121 definition of "wages" for FICA purposes in a number of very *specific* respects. First, Congress amended section 3121(a)(2) by striking "(A) retirement" plans from the list of exclusions under that provision. *See* section 324(a)(3)(A) of the 1983 Act. Second, Congress also struck section 3121(a)(3), relating to the exclusion for non-plan retirement arrangements. *See id.* at section 324(a)(3)(B). Congress then added a new section, 3121(a)(5)(E), which provides that the FICA wage base excludes:

> any payment made to, or on behalf of, an employee or his beneficiary ... under or to an annuity contract described in sec-

tion 403(b), *other than* a payment for the purchase of such contract which is made by reason of a salary *reduction* agreement (whether evidenced by a written instrument or otherwise).

*Id.* at section 324(a)(2)(C) of the 1983 Act (emphasis added) (now codified at 26 U.S.C. § 3121(a)(5)(D)).

The specific amendments concerning section 3121 effectively codify Rev.Rul. 65–208. If applicable, these alterations defeat plaintiff's statutory argument. The 1983 Act, however, stated that these amendments to section 3121 (as well as the *Rowan* decoupling provision) were to be effective only for remuneration paid after December 31, 1983. *See* sections 324(d)(1) & 327(d)(1) of the 1983 Act. Thus, by applying the amendments prospectively, the 1983 Act does not, by itself, affect the years involved in this suit.[3]

In 1984, however, Congress addressed the question of retroactivity. Specifically, section 2662(g) of the Deficit Reduction Act of 1984 (the "1984 Act"), Pub.L. No. 98–369, § 2662(g) 98 Stat. 494, 1160, amends the 1983 Act by changing the effective date of the Rowan decoupling provision as follows:

> Section 327(d) of such amendments ... is amended to read as follows:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "(2) The amendments made by subsection (b) and subsection (c)(4) shall apply to remuneration ... paid after March 4, 1983, *and to any such remuneration paid on or before such date which the employer treated as wages when paid.*"

*Id.* (emphasis added). By making the change retroactive, there can be no doubt

---

**3.** The failure in either the 1983 or 1984 legislation explicitly to apply the specific section 3121(a) amendments retroactively supports, once again, the notion that Rev.Rul. 65–208, which Congress purported to codify, was seen by Congress as the applicable law prior to *Rowan.* That is, the *Rowan* "decoupling" provision, which was in 1984 explicitly made retroactive, was apparently seen by Congress as sufficient to make the law applicable to the *Rowan* years consistent with the present statutory scheme—a scheme based upon Rev.Rul. 65–208. Apparent-

ly, Congress believed that retroactive application of the codification was simply unnecessary because the revenue ruling already controlled once *Rowan* was removed. The following discussion regarding the retroactivity of the specific section 3121 amendments, then, has relevance only if it is assumed that Congress saw the earlier section 3121(a) as the plaintiff does and desired to *change* the law. As already noted, we do not accept the plaintiff's interpretation.

that Congress intended to cut off *all* claims to refunds based on the rationale of *Rowan*, i.e., that "wages" for FICA purposes are presumptively the same as "wages" for income tax withholding purposes.

Plaintiff, however, considers significant Congress' failure also to explicitly make the specific amendments to section 3121, which effectively codify Rev.Rul. 65–208, retroactive. "It is ... clear," argues the plaintiff, "that Congress did not retroactively extinguish the right to refund based on section 3121(a)(2)." However, the following statement in the legislative history of the 1984 Act demonstrates that Congress clearly intended to bar the type of refund sought by the plaintiff here:

The provision in the [Social Security] Amendments applies to remuneration paid after December 31, 1983, for FICA and social security benefit purposes and to remuneration paid after December 31, 1984, for FUTA (Federal Unemployment Tax Act) purposes. Thus, it is possible that this provision could be cited as demonstrating congressional intent that the reasoning of the *Rowan* decision should generally apply before these dates to types of remuneration other than meals and lodging excluded under section 119, e.g., to contributions under a salary reduction agreement to tax-sheltered annuities (sec. 403(b)). These contributions have been held by the Treasury Department to be taxable for FICA purposes (Revenue Ruling 65–208) even though they are exempt by regulation from income tax withholding. If the 1965 revenue ruling were determined to be invalid, then employers and employees would be eligible for tax refunds for open years because taxable wages would be lower. In addition, wages for benefit computation purposes would be reduced, leading in some cases to reduction of social security benefits being paid to current beneficiaries and recoupment of a portion of benefits which have been paid in recent years on the basis of wage records which included the salary reduction contributions.

Explanation of Provision

In order to avoid the inferences which this provision could raise, the bill clarifies the effective date of the provision overriding the *Rowan* decision so that the provision applies for all purposes, other than the treatment of certain employer-provided meals and lodging, both to remuneration paid after March 4, 1983, and to remuneration paid on or before March 4, 1983, which the employer treated as wages when paid. For example, if an employer treated as wages, for FICA or FUTA taxes (or both), the amounts contributed during 1982 to an employee's tax-sheltered annuity pursuant to a salary reduction agreement, the FICA or FUTA taxes (as the case may be) paid by the employer and employee may not be refunded or credited. The committee intends no inference as to the treatment of amounts paid on or before March 4, 1983, which the employer did not treat as wages when paid.

H.R.Rep. No. 432, 98th Cong., 1st Sess. 1658, *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1280–81 (footnote omitted).

Faced with this clear congressional purpose to ban refunds in this type of case, the question becomes whether this intent can be implemented, assuming this is necessary, *see supra* note 3, despite Congress' failure explicitly to provide for retroactivity. Plaintiff stresses the actual failure of Congress, through inadvertence or otherwise, to make the specific section 3121 amendments retroactive and argues that the changes should, on the basis of this failure, not be seen as applying to this case. In support of its position, plaintiff cites *Iselin v. United States,* 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566 (1926). In *Iselin,* the Supreme Court, through Justice Brandeis, stated that "[w]hat the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the

judicial function." *Id.* at 251, 46 S.Ct. at 250.

It is generally true that courts should look to the plain language of, and not rewrite, statutes. *See, e.g., id.; Tracy Leigh Development Corp. v. Government of the Virgin Islands*, 501 F.2d 439, 442 (3d Cir.1974) (relying on Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527 (1947)). However, the Supreme Court recently stated as follows:

> We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. *Absent a clearly expressed legislative intention to the contrary,* that language must ordinarily be regarded as conclusive.

*Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (emphasis added). In the *Iselin* case cited by plaintiff, there was no "clearly expressed legislative intention." In the instant case, however, Congress' intent, as expressed in the legislative history, *see supra,* is very clear. Congress intended, through the 1984 amendments, to *eliminate* the very type of refund sought in the instant case. Thus, in light of the recent guidance from the Supreme Court, the statute should be construed so as to reach this result. Furthermore, "[i]t is a well settled rule that statutory exemptions from taxation, being a matter of grace, are to be strictly and narrowly construed." *King Christian Enterprises, Inc. v. Government of the Virgin Islands*, 345 F.2d 633, 637 (3d Cir. 1965), *quoted in Tracy Leigh Development Corp. v. Government of the Virgin Islands*, 501 F.2d at 443. We therefore do not see section 3121(a) as supporting plaintiff's claim for a refund.

### B.

In the alternative, plaintiff relies on the *Rowan* decision. The instant case involves payments made to establish a retirement annuity plan of the type described in section 403(b) of the Code. Pursuant to section 403(b), the entire amount contributed, i.e., both the salary reduction and the salary supplement amounts, is excludable from the employee's gross income for federal income tax purposes. However, Rev.Rul. 65–208, which the plaintiff itself followed over a period of years, requires that the salary reduction sums be included for FICA purposes. Because of this variance in treatment for income tax and FICA purposes, the *Rowan* case is significant.

In *Rowan Companies, Inc. v. United States*, 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981), the Supreme Court considered whether meals and lodging provided employees by their employer on its business premises for its own convenience constituted "wages" for purposes of FICA and the FUTA. Treasury regulations of long standing specifically excluded meals and lodging from the definition of "wages" for income tax withholding purposes but included them within the definition of "wages" for FICA and FUTA purposes. The district court and the court of appeals had found that the different interpretations of the definition of "wages" were justified by the different purposes of FICA and FUTA, on the one hand, and income tax withholding, on the other.

The Supreme Court reversed, holding that, absent express congressional intent to the contrary, the term "wages" is to be interpreted in the same manner for FICA and FUTA purposes as for income tax withholding purposes. The Court stated:

> The plain language and legislative histories of the relevant Acts indicate that Congress intended its definition to be interpreted in the same manner for FICA and FUTA as for income tax withholding.

*Id.* at 263, 101 S.Ct. at 2297.

If it has vitality, *Rowan* obviously helps the plaintiff here. As noted earlier, however, Congress, in the 1983 Act, expressly overruled the broad holding of *Rowan,* at least as it applied to claims for refund of FICA taxes on salary reductions. In the 1984 Act, Congress gave retroactive effect to the 1983 legislation. Thus, for the plaintiff to rely on its alternative argu-

ment, it must show that Congress acted unconstitutionally in overruling *Rowan*. To this end, plaintiff presents two principal arguments.[4]

First, plaintiff alleges that Congress violated the equal protection clause by impermissibly distinguishing among employers. In particular, it asserts that Congress, in denying refunds, improperly favored employers who had failed to comply with Rev. Rul. 65–208 (and thus failed to pay the tax) over those who had complied with the ruling. This argument is without merit. The legislative history of the 1984 Act expressly disclaims any intent to validate failures to withhold FICA taxes. *See* H.R.Rep. No. 432, *supra*, at 1658. Thus, the Government, if not barred by the statute of limitations, conceivably could sue the non-complying employers and recover from them the additional taxes due.

■■■ A more troublesome argument is that Congress, in imposing a retroactive tax, violated the Due Process Clause. It is clear that Congress may, without violating the due process clause, enact legislation having retroactive application if it is justified by a rational legislative purpose. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, —— U.S. ——, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984). Furthermore, when such legislation is "curative"[5] in character, as in this instance, the retroactive application is typically entitled to be liberally construed. *See Goddard v. Frazier*, 156 F.2d 938, 942 (10th Cir.1946); 2A C. Sands, *Sutherland Statutory Construction* § 41.-11, at 290 (4th ed. 1973). There also appears to be a greater tolerance toward retroactive application of laws which coincide with longstanding public policy than where

that is not the case. *United States v. Perry*, 431 F.2d 1020, 1024 (9th Cir.1970).

Almost without exception, Congress has given general revenue statutes an effective date prior to the date of actual enactment, as it has to the Internal Revenue Codes of 1939 and 1954. *United States v. Darusmont*, 449 U.S. 292, 296, 101 S.Ct. 549, 551, 66 L.Ed.2d 513 (1981). With respect to income tax statutes, retroactive application apparently has been confined to short periods so as to include profits from transactions while the statute was in process, or within so much of the calendar year as preceded the enactment. *United States v. Hudson*, 299 U.S. 498, 500–501, 57 S.Ct. 309, 310, 81 L.Ed. 370 (1937), *cited with approval in United States v. Darusmont*, 449 U.S. at 297, 101 S.Ct. at 552. Taxation is "but a way of apportioning the cost of government among those ... privileged to enjoy its benefits and [who] must bear its burdens" and its "retroactive imposition does not necessarily infringe due process." *Welch v. Henry*, 305 U.S. 134, 146–47, 59 S.Ct. 121, 125–26, 83 L.Ed. 87 (1938).

It is true that *Welch v. Henry* created some doubt as to the constitutional validity of imposing retroactive tax liability for periods preceding the year prior to the passage of the legislation. 305 U.S. at 146–51, 59 S.Ct. at 125–28. In fact, some state courts, in applying *Welch v. Henry*, have held unconstitutional any tax statute which attempts to be applied retroactively beyond the year of the legislative session immediately preceding the year of the statute's enactment. *See, e.g., Commonwealth v. Budd Co.*, 379 Pa. 159, 108 A.2d 563 (1954), *appeal dismissed*, 349 U.S. 935, 75 S.Ct. 782, 99 L.Ed. 1264 (1955); *Gulf & Western Corp. v. Commonwealth*, 74 Pa. Commw. 493, 459 A.2d 1369 (1983). The

---

4. The plaintiff, in addition to its main arguments, alleges that Congress, in the 1984 Act, violated the separation of powers doctrine by prescribing a rule of decision in a pending case. *See United States v. Klein*, 80 U.S. (13 Wall.) 128, 148, 20 L.Ed. 519 (1871); *United States v. Sioux Nation of Indians*, 448 U.S. 371, 404, 100 S.Ct. 2716, 2735, 65 L.Ed.2d 844 (1979). This argument is without merit. Congress did not desire to effect a rule of decision only in a particular case (for example, by taking away jurisdiction,

as in *Klein*). Instead, Congress changed the tax law generally. To be sure, the congressional change has rather broad application, applying as it does even to *non*-litigating taxpayers.

5. "Curative" legislation is generally defined as legislation enacted to cure defects in prior law. 2A C. Sands, *Sutherland Statutory Construction* § 41.11, at 289 (4th ed. 1973).

Supreme Court, however, has never actually prohibited such retroactivity. Instead, the Court has spoken only in vague terms, permitting an income tax statute to be retroactively applied to "recent transactions." *Welch v. Henry*, 305 U.S. at 150, 59 S.Ct. at 127; *Cooper v. United States*, 280 U.S. 409, 411, 50 S.Ct. 164, 165, 74 L.Ed. 516 (1930); *cf. United States v. Hudson*, 299 U.S. at 500, 57 S.Ct. at 310 ("relatively short periods"). Similarly, no federal court of appeals has yet adopted an absolute temporal limitation on retroactivity.[6] *See, e.g., Shanahan v. United States*, 447 F.2d 1082, 1084 (10th Cir.1971); *First National Bank v. United States*, 420 F.2d 725, 730, 190 Ct.Cl. 400, *cert. denied*, 398 U.S. 950, 90 S.Ct. 1868, 26 L.Ed.2d 289 (1970); *Wilgard Realty Co. v. Commissioner*, 127 F.2d 514, 517 (2d Cir.1942).

We find some guidance in the rather flexible criteria delineated by the Court in *Welch v. Henry:* "In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation." 305 U.S. at 147, 59 S.Ct. at 126. The federal courts have generally interpreted these criteria as indicating that "[r]etroactive operation is constitutional where it is not harsh, arbitrary or unfair." *Shanahan*, 447 F.2d at 1084. An amplification of this principle is provided by an earlier case:

> The decisive test in this instance is whether this taxpayer has had its expectations as to taxation unreasonably disappointed.... [R]etroactive taxation is not so arbitrary and oppressive as to be unconstitutional if it is no more burdensome than the taxpayer should have expected it to be when he did the thing which created the tax liability.... And

when it is not, whether the period of retroactivity is comparatively long or short is of little consequence provided it isn't too long to be within reason.

*Wilgard Realty Co.*, 127 F.2d at 517.

In the instant case, Congress believed that the broad holding of *Rowan* contravened the policies and principles underlying the statutory schema and philosophy of our social security and Medicare systems. It therefore overruled that holding and codified Rev.Rul. 65–208—a ruling that had been applied and enforced for over fifteen years. Even this plaintiff had conformed to it in making its reports and paying its FICA taxes quarter-annually year after year, including for a significant period *after* the *Rowan* decision. Thus, it can hardly be said that the plaintiff had its tax expectations unreasonably disappointed or that it is a victim of oppressive taxation as a result of the legislation overruling *Rowan*. The 1984 Act, as demonstrated by its legislative history, merely averts the potentially disruptive effect of the *Rowan* decision on the multitude of transactions properly reported by taxpayers in accordance with the applicable rule of law at the time. *See* H.R.Rep. No. 432, *supra*, at 1658. The statute imposes neither a new nor an unforeseeable or unexpected tax liability on either the employer or its employees. Thus, we believe that retroactive application of the statute under the circumstances we have here "is not so arbitrary and oppressive as to be unconstitutional." *Id.* We therefore reject plaintiff's alternative argument based on *Rowan*.

### IV.

In summary, we hold that neither 26 U.S.C. § 3121(a), even as it existed prior to the relevant amendments, nor the *Rowan*

---

**6.** This is true even outside the taxation area. With respect to the Fair Labor Standards Legislation of 1938, 29 U.S.C. §§ 201–219, creating rights of employees engaged in interstate commerce to overtime pay, courts have rejected the due process challenge to the constitutionality of congressional legislation enacted nine years later (Portal to Portal Act of 1947, 29 U.S.C. § 251 et seq.), retroactively "obliterating causes of action for overtime pay, liquidated damages

and counsel fees which had accrued under the Fair Labor Standards Act previous to the enactment of the Portal to Portal Act." *Darr v. Mutual Life Insurance Co.*, 169 F.2d 262, 266 (2d Cir.1948); *Battaglia v. General Motors Corp.*, 169 F.2d 254 (2d Cir.), *cert. denied*, 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948); *accord Fisch v. General Motors Corp.*, 169 F.2d 266 (6th Cir. 1948).

decision entitlés plaintiff to a refund of the FICA taxes paid. Accordingly, the judgment of the district court will be affirmed.

WEIS, Circuit Judge, dissenting.

I dissent because the majority fails to accord proper consideration to the wording of the statute, and gives undue weight to a revenue ruling as well as to the 98th Congress' interpretation of a statute enacted some 45 years earlier.

Plaintiff contends that certain payments into retirement funds for the years 1979 to 1982 on behalf of its employees were not subject to Social Security taxes (FICA). The question in this case is whether the statute includes within "wages" the salary reduction amounts.

The logical place to begin is with the statutory language. The exclusion from FICA wages of payments for retirement annuities, or similar arrangements, dates back to 1939. 53 Stat. 1373. Section 209 of the Act defined "wages" subject to the FICA tax as:

"[A]ll remuneration for employment, . . . except that such term shall not include . . .—

(1) [an amount in excess of the Social Security base];

(2) The amount of any payment made to, or on behalf of, an employee under a plan or system established by an employer (including any amount paid by an employer for . . . annuities . . .) on account of

A. retirement. . . ."

The House Report explained that the definition

"excludes all payments made by the employer to or on behalf of an employee . . . under a plan or system providing for retirement benefits (including pensions), . . . . These payments will be excluded even though the amount or possibility of such payments is taken into consideration in fixing the amount of remuneration and even though such payments are required, either expressly or impliedly, by the contract of employment."

H.Rep. No. 728, 76th Cong., 1st Sess., reprinted in 1939–2 Cum.Bull. 538, 548. Parallel references appear in the Senate Report. See S.Rep. No. 734, 76th Cong., 1st Sess., reprinted in 1939–2 Cum.Bull. 565, 575–76.

The House Report articulated the reason for excluding from FICA wages, among other items, payments by an employer to purchase retirement annuities: "This will save employers time and money but what is more important is that it will. eliminate any reluctance on the part of the employer to establish such plans due to the additional tax cost." H.Rep. No. 728, 76th Cong., 1st Sess., reprinted in 1939–2 Cum.Bull. at 543.

The pertinent part of the definition of wages was not changed until 1983. In the meantime two revenue rulings were issued by the Internal Revenue Service. In 1953, Revenue Ruling 181 discussed the taxability of the amount paid by an employer as premiums for an employee's annuity. The ruling stated,

"The payment of the insurance premium by the employer does not fall within the meaning of the term 'wages' as defined in section 1621 of the Code or section 1426(a)(3) [later codified at 3121] of the Federal Insurance Contributions Act. Therefore, such payment is not subject to withholding either for Federal employment or income tax purposes."

Twelve years later, the IRS issued Revenue Ruling, 65–208. 1965–2 Cum.Bull. 383. An employee had agreed to a salary reduction in a specified sum, which was used to purchase a retirement annuity. The amount was properly excluded from the employee's wages for income tax purposes under section 403(b), but the ruling opined that the sums were nevertheless within the definition of wages for FICA purposes. The ruling "distinguished" the one issued in 1953, saying that the earlier case contemplated the situation "where an organization uses its own funds for the purchase of an annuity contract, rather than one where the employees take a voluntary

reduction in salary to provide the necessary funds."

The 1965 ruling cited no authority for its position, did not discuss the 1939 legislative history for the statutory provision, and did not attempt to explain how the interpretation was consistent with the statutory language.

As noted, the definition of "wages" was changed in 1983. By this time the financial stability of the Social Security system was at stake, and congressional emphasis shifted from ease of employer administration to conservation of funds. As part of the overhaul, Congress deleted the word "retirement" and expressly included in the FICA wage base payments "made by reason of a salary reduction agreement" for the purchase of an annuity contract. These amendments were made applicable to remuneration paid after December 31, 1983. 97 Stat. 125.

Concern about the financial soundness of the Social Security System continued, and in 1984 Congress addressed the potentially disruptive effect of the *Rowan* decision discussed in the majority opinion. The 1984 provision made retroactive the part of the 1983 amendment which specifically counteracted *Rowan.* Despite what was said in the Committee reports, the legislation passed in 1984 did not change the effective date of the definition of wages as modified in 1983. Because the relevant exclusion from the FICA definition of wages between 1939 and 1983 was not altered by statute, the amended definition does not apply to the period at issue here—1979–1982.

Ignoring the statutory language and the pertinent legislative history, the IRS refers to the 1965 ruling as the "controlling authority before *Rowan.*" That characterization is inaccurate because the ruling was neither "controlling" nor "authority."

The IRS does not mention the limited efficacy these rulings are accorded by the Service itself. A cautionary note appears at the beginning of the Cumulative Bulletin:

"The rulings reported ... are for the information of taxpayers and their counsel as showing the trend of official opinion in the administration of the Bureau of Internal Revenue; the rulings other than Treasury Decisions have none of the force or effect of Treasury Decisions and do not commit the Department to any interpretation of the law which has not been formally approved and promulgated by the Secretary of the Treasury.

\* \* \* \* \* \*

Unless otherwise specifically indicated, all published rulings and decisions have received the consideration and approval of the Chief Counsel for the Bureau of Internal Revenue."

A revenue ruling is simply the opinion of the Service's legal counsel which has not received the approval of the Secretary nor of Congress. A ruling is not a regulation and does not bind the IRS. As one court colorfully explains, a ruling is "made to order for the Commissioner by his legal staff, and [has] no more binding or legal force than the opinion of any other lawyer." *United States v. Bennett,* 186 F.2d 407, 410 (5th Cir.1951). *See also Dixon v. United States,* 381 U.S. 68, 73–75, 85 S.Ct. 1301, 1304–1306, 14 L.Ed.2d 223 (1965). In *Biddle v. Commissioner,* 302 U.S. 573, 582, 58 S.Ct. 379, 383, 82 L.Ed. 431 (1938), the Supreme Court cautioned that "departmental rulings not promulgated by the Secretary are little aid in interpreting a tax statute."

This court has also spoken to the subject on a number of occasions. In *Geib v. New York State Teamsters Conference Pension & Retirement Fund,* 758 F.2d 973, 976 (3d Cir.1985), we pointed out that "although revenue rulings may be helpful, they do not have the force of law." *See also Bencivenga v. Western Pa. Teamsters & Employers Pension Fund,* 763 F.2d 574 (3d Cir.1985). *Becker v. C.I.R.,* 751 F.2d 146 (3d Cir.1984), illustrates that a taxpayer relies on revenue rulings at his peril because the Commissioner is free to—and does—revoke them retroactively, at any time.

The majority and the district court emphasize the 1965 revenue ruling but, when properly evaluated, it provides inadequate support. The ruling is simply an attempt by the legal staff of the IRS to legislate.

Revenue Ruling 65–208 contradicts the statutory language as well as the legislative history. The statute reads "all payments made by the employer to or on behalf of an employee" for retirement are excluded. The legislative history explains that "these payments will be excluded even though the amount or possibility of such payments is taken into consideration in fixing the amount of remuneration." Moreover, as noted earlier, the impetus for the definition of wages came from a congressional desire to encourage the establishment of retirement, disability, and medical payment plans to supplement the minimal social security benefits which then existed. Revenue Ruling 65–208 completely overlooked the relevant congressional policy expressed some 26 years before the ruling was rendered.

In addition, the ruling is inconsistent with the 1953 ruling as well as Treasury Regulation 31.3121(a)(2)–1(d), the text of which is lifted almost verbatim from the Committee reports of the 1939 Act. The government's explanation of the inconsistency is unconvincing.

The effort to legitimatize the 1965 revenue ruling relies on the legislative history of the 1983 and 1984 amendments. But the Supreme Court has admonished that the views of members of a later Congress are entitled to little, if any, weight in interpreting the actions of an earlier Congress. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864 n. 39, 52 L.Ed.2d 396 (1977). It is the intent of the Congress that enacted the provision not the views of a subsequent Congress that controls. *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 34, 102 S.Ct. 821, 832, 70 L.Ed.2d 792 (1982).

Even the limited weight accorded the views of a subsequent Congress necessarily decreases as the interval between sessions lengthens. As the Court noted in *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 200 n. 7, 98 S.Ct. 444, 449 n. 7, 54 L.Ed.2d 402 (1977), "Legislative observations 10 years after passage of the Act are in no sense part of the legislative history." Certainly, the overlap in membership between the Congress which passed the 1939 Act and that which some 44 years later considered the 1983 amendments was at best infinitesimal.

In the legislative history to the 1983 amendments, the Committee said it intended to "codify" the 1965 revenue ruling, the validity of which was called into doubt after the *Rowan* decision. S.Rep. No. 23, 98th Cong., 1st Sess. 39, *reprinted in* 1983 U.S.Code Cong. & Ad.News 143, 180; H.Rep. No. 25, *id.* at 298. I read this observation as a concession that the revenue ruling was not authoritative and that a statutory amendment was necessary to effect its aim. It should be noted, also, that the 1983 amendments went further than the revenue ruling by absorbing into the FICA wage base the employer's contribution, which had previously not been included.

The 1983 amendments were consistent with Congress' concern about the solvency of the Social Security system. As the House Report states, "The primary focus of your Committee's bill is on restoring the financial soundness of the Old Age and Survivors Insurance (OASI) program which is facing severe cash shortfalls over the next seven years." H.Rep. No. 25, 98th Cong., 1st Sess., 1983 U.S.Code Cong. & Ad.News 219. Despite that concern, Congress did not make the 1983 amendments to the definition retroactive but provided they would be applicable only to remuneration paid after December 31, 1983. Consequently, neither the 1983 nor the 1984 amendments have any effect on the claim that Temple has submitted for the years 1979–1982.

My analysis of the wording of the FICA statute and its legislative history does not depend on the Supreme Court's holding in *Rowan*. Although that decision provides

additional support for my conclusion, it is not essential to it.

If *Rowan* were to be applied to this case a synopsis of the reasoning would begin by noting that Congress, in the early history of the Social Security Act, clearly intended that the term wages would mean the same in both the income tax and the FICA contexts. The Service concedes that the payments to the pension fund were not subject to income tax, and therefore they were not subject to the FICA tax.

However, the Supreme Court's holding was repudiated by Congress in 1983 and made retroactive in 1984. Congress has often disagreed with a judicial construction of a statute and has then amended it, but generally such amendments are applied only prospectively.

The Supreme Court has held that retroactive imposition of a tax for one year has generally been though not to violate due process. *See United States v. Darusmont,* 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981). One case held that a two-year period was not excessive when a state legislature met only bi-annually and the retroactivity was limited to the intervening period. *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938). *See also United States v. Hudson,* 299 U.S. 498, 57 S.Ct. 309, 81 L.Ed. 370 (1937); *Milliken v. United States,* 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809 (1931); *Cooper v. United States,* 280 U.S. 409, 50 S.Ct. 164, 74 L.Ed. 516 (1930).

If the 1984 amendments are applied to the case at hand, Congress would be reaching back five years to 1979 and, in addition, would be undertaking the function of construing a statute enacted and re-enacted by previous Congresses. I am not convinced by the majority's treatment of these problems and note that they have cited no case which approves retroactive taxation similar to that attempted by Congress here.

My approach to this case, however, does not require that I determine whether Congress could properly make the 1983 amendments of "wages" retroactive because Congress clearly did not do so. The 1984 language does not state that the section at issue is to be applied retroactively. The majority concedes that fact but nevertheless, because of statements in the legislative history pertinent only to the *Rowan* provision, supplies wording that Congress did not include in the statute. This is contrary to what the Supreme Court said in *Iselin v. United States,* 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926),—the courts should not enlarge a statute so that "what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function."

Although Congress did not relish the idea of refund suits like the one at hand, in 1984 it confined its efforts to counteracting the *Rowan* decision and did not disturb the plainly worded effective date assigned to the definition of wages in 1983. Perhaps the omission was inadvertent, but that does not appear in the legislative history.

Furthermore, I see no need for the court to be unduly solicitous about curing statutory deficiencies to aid the IRS in doubtful cases. The Service insists on adherence to the technical requirements of the Code when convenient. That approach is not improper, but the same rule should apply when it is the taxpayer who benefits. He who lives by the sword of rigid adherence to technicalities should not be surprised at being nicked in return from time to time.

I believe that under the language of the applicable section of the Internal Revenue Code the taxpayer is entitled to a refund. I dissent from its denial.