T.C. Memo. 2001-8


UNITED STATES TAX COURT


PENNY J. SUTHERLAND, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15174-99.                    Filed January 19, 2001.


<u>Daniel C. Ertel</u>, for petitioner.

<u>Robin L. Peacock</u>, for respondent.


MEMORANDUM OPINION

JACOBS, <u>Judge</u>: This case is before the Court fully stipulated. See Rule 122. Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a $3,656 deficiency in petitioner's 1997 Federal income tax; this determination is based on respondent's disallowance of petitioner's claim for an earned income credit. Thus, the ultimate issue we must decide is whether petitioner is entitled to the claimed earned income credit, which in turn depends upon whether the so-called tie-breaker rule under section 32(c)(1)(C) is applicable. In resolving this latter question, we must decide whether the retroactive application of amended section 32(c)(3)(A) in 1998 is constitutional.

## Background

The stipulation of facts and the attached exhibits are incorporated herein. The stipulated facts are hereby found.

Petitioner resided in Saratoga, New York, at the time she filed her petition.

During the entire year in issue (1997), petitioner was unmarried and resided with: John Pancake, her boyfriend; Christina and Mitchell Sutherland, her children from a prior marriage; and Alyssa Pancake, the daughter of Mr. Pancake and petitioner. Each child was under the age of 19.

Petitioner, Mr. Pancake, and the three children lived together as a family unit. In fact, Mr. Pancake cared for Christina and Mitchell as if they were his own children. Petitioner and Mr. Pancake shared the costs of food and lodging for the entire household.

During the year in issue, petitioner was employed by Wesley Health Care Center, Inc., in Saratoga Springs, New York. She electronically filed her 1997 Federal income tax return on April 15, 1998, reporting wage income of $11,375. She reported her filing status as single and claimed dependency exemptions for Christina and Mitchell, identifying them as "qualifying children" for purposes of claiming a $3,656 earned income credit. (For purposes of claiming this credit, petitioner's modified adjusted gross income for 1997 was $11,375.)

On his 1997 Federal income tax return, Mr. Pancake claimed an earned income credit for Alyssa. For purposes of claiming this credit, Mr. Pancake's 1997 modified adjusted gross income was higher than petitioner's. (Mr. Pancake identified neither Christina nor Mitchell as his qualifying children for purposes of claiming this credit on his return.)

Respondent disallowed the earned income credit petitioner claimed on her 1997 return, explaining in the notice of deficiency:

> All the children qualify both Penny and John for the earned income credit. Mitchell and Christina qualify as foster children for John. They do not have to be related to him to be qualifying children. They lived as a family in the same home the entire year and therefore are his qualifying children for the earned income credit. Because Penny's income is not the highest, we have not allowed her earned income credit.
>
> John may amend his return to list two qualifying children for the earned income credit is [sic] he wishes.

## Discussion

Issue 1.  Earned Income Credit

Section 32(a)(1) allows an "eligible individual" to claim an earned income credit.  Generally, an eligible individual is any person who has a "qualifying child" for the taxable year or any other person who does not have a qualifying child if that person resided in the United States for more than one-half of the year, was over age 25, but under age 65, before the end of the year, and was not a dependent of another taxpayer for the year.  Sec. 32(c)(1)(A).

Section 32(c)(3)(A) defines a qualifying child as an individual:

> (i) who bears a relationship to the taxpayer described in subparagraph (B) [relationship test],

> (ii) except as provided in subparagraph (B)(iii), who has the same principal place of abode as the taxpayer for more than one-half of such taxable year [residency test, and]

> (iii) who meets the age requirements of subparagraph (C) [age test], * * *

An individual satisfies the relationship test with respect to a particular taxpayer if the individual is:

> (I)  a son or daughter of the taxpayer, or a descendant of either,

> (II)  a stepson or stepdaughter of the taxpayer, or

> (III) an eligible foster child of the taxpayer.

Sec. 32(c)(3)(B)(i). An eligible foster child[1] is defined as an individual who the taxpayer cares for as his or her own child and who has the same principal place of abode as the taxpayer for the entire taxable year in issue. See sec. 32(c)(3)(B)(iii).

An individual satisfies the age test if he or she is under age 19 at the end of the taxable year, is a full-time student under age 24 at the end of the taxable year, or is permanently and totally disabled during the taxable year. See sec. 32(c)(3)(C).

On the basis of the stipulated record, we conclude that for 1997 Christina and Mitchell were both petitioner's and Mr. Pancake's qualifying children for purposes of the earned income credit. Thus, both petitioner and Mr. Pancake are eligible individuals (under section 32(a)(1)) for purposes of claiming the earned income credit.

Section 32(c)(1)(C) provides a tie-breaker rule where there are two or more eligible individuals with respect to the same qualifying child for the same taxable year (as is the case here):

> If 2 or more individuals would (but for this subparagraph and after application of subparagraph (B)) be treated as eligible individuals with respect to the same qualifying child for taxable years beginning in the same calendar year, only the individual with the highest modified adjusted gross income for such taxable years shall be treated as an eligible individual with respect to such qualifying child. [Emphasis added.]

---

[1] Although Congress recently amended the definition of an eligible foster child, see Ticket to Work and Work Incentives Improvement Act of 1999, Pub. L. 106-170, sec. 412, 113 Stat. 1860, 1917, the amended definition does not apply herein because it is effective only for tax years beginning after Dec. 31, 1999.

For 1997, petitioner's modified adjusted gross income was less than that of Mr. Pancake. If we apply the section 32(c)(1)(C) tie-breaker rule, Mr. Pancake, and not petitioner, is the individual eligible to claim the earned income credit with respect to Christina and Mitchell. See, e.g., <u>Jackson v. Commissioner</u>, T.C. Memo. 1996-54.

Petitioner maintains that here the section 32(c)(1)(C) tie-breaker rule is inapplicable on the basis that Mr. Pancake failed to identify Christina and Mitchell as his qualifying children on his 1997 return. In this regard, as explained <u>infra</u>, petitioner erroneously relies upon the definition of a qualifying child as it existed before the 1998 amendment.

As originally enacted in 1990, section 32(c)(3)(A)[2] defined a

---

[2]   Former sec. 32(c)(3)(A) provided as follows:

(A)  In general.--The term "qualifying child" means, with respect to any taxpayer for any taxable year, an individual--

    (i)   who bears a relationship to the taxpayer described in subparagraph (B),

    (ii)  except as provided in subparagraph (B)(iii), who has the same principal place of abode as the taxpayer for more than one-half of such taxable year,

    (iii) who meets the age requirements of subparagraph (C), and

    (iv)  <u>with respect to whom the taxpayer meets the identification requirements of subparagraph (D)</u>.  [Emphasis added.]

qualifying child as one who satisfied the relationship, residency, and age tests (discussed <u>supra</u>), as well as the section 32(c)(3)(A)(iv) "identification test". See Omnibus Budget Reconciliation Act of 1990 (OBRA), Pub. L. 101-508, sec. 11111(a), 104 Stat. 1388, 1388-408 (amending sec. 32).

The identification test required a taxpayer to include on his or her income tax return the name, age, and taxpayer identification number of each qualifying child with respect to whom he or she claimed the earned income credit. See sec. 32(c)(3)(D).[3] The section 32(c)(3)(A) definition of a qualifying child, however, was amended in 1998 (the 1998 amendment), and amended section 32(c)(3) no longer required the identification of a qualifying child on the qualified individual's income tax return. See Internal Revenue

---

[3] Former sec. 32(c)(3)(D) provided:

(D) Identification requirements.--

(i) In general.--The requirements of this subparagraph are met if the taxpayer includes the name, age, and TIN of each qualifying child (without regard to this subparagraph) on the return of tax for the taxable year.

(ii) Other methods.--The Secretary may prescribe other methods for providing the information described in clause (i).

A Social Security number did not have to be furnished on a return for the 1995 tax year, in the case of qualifying children born after Oct. 1, 1995. For a return for the 1996 tax year, the requirement is waived for qualifying children born after Nov. 30, 1996. See Uruguay Round Agreements Act, Pub. L. 103-465, sec. 742(c)(2), 108 Stat. 5010 (1994).

Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 6021(b)(3), 112 Stat. 823. As part of this amendment, section 32(c)(3)(A)(iv) was stricken from the statute.

In addition to amending section 32(c)(3)(A), in 1998 Congress enacted section 32(c)(1)(G),[4] which provides that a taxpayer who has one or more qualifying children, but does not identify any of them in accordance with section 32(c)(3)(D), is not entitled to receive the earned income credit. See RRA 1998 sec. 6021(b)(2), 112 Stat. 824 (adding sec. 32(c)(1)(G)). The 1998 regime emphasized that although the identification requirement is no longer a specific <u>element of the definition of a qualifying child</u>, a taxpayer must nevertheless identify his or her qualifying child as a <u>prerequisite to receiving the earned income credit</u>. "The bill clarifies that the identification requirement is a requirement for claiming the EIC [earned income credit], rather than an element of the definitions of 'eligible individual' and 'qualifying child'." S. Rept. 105-174, at 200 (1998). The 1998 amendment was effective retroactively as if it were included in the provisions of OBRA section 11111.

---

[4] Sec. 32(c)(1)(G) provides:

(G) Individuals who do not include TIN, etc., of any qualifying child.--No credit shall be allowed under this section to any eligible individual who has one or more qualifying children if no qualifying child of such individual is taken into account under subsection (b) by reason of paragraph (3)(D).

To conclude this aspect of our opinion, the 1998 amendment applies to 1997, the tax year before us. We dismiss petitioner's argument that because Mr. Pancake did not identify Christina and Mitchell as his qualifying children on his 1997 return, he is not eligible for the earned income credit for that year.

Issue 2. Constitutionality of 1998 Amendment

We now turn to whether the retroactive application of the 1998 amendment to petitioner's 1997 tax year denies petitioner due process of law under the Fifth Amendment to the Constitution. As explained infra, we hold that it does not.

The Fifth Amendment to the Constitution provides: "No person shall be * * * deprived of life, liberty, or property without due process of law". The Supreme Court has consistently upheld retroactive tax legislation against due process challenges. See, e.g., United States v. Carlton, 512 U.S. 26, 30-31 (1994); United States v. Darusmont, 449 U.S. 292 (1981); Welch v. Henry, 305 U.S. 134 (1938); United States v. Hudson, 299 U.S. 498 (1937); Milliken v. United States, 283 U.S. 15 (1931); Cooper v. United States, 280 U.S. 409 (1930); Brushaber v. Union Pac. R. Co., 240 U.S. 1, 20 (1916). "Congress 'almost without exception' has given general revenue statutes effective dates prior to the dates of actual enactment." United States v. Carlton, supra at 32-33 (quoting United States v. Darusmont, supra at 296). The test of invalidity of a retroactive tax law is whether the retroactive nature of the

law "'is itself justified by a rational legislative purpose.'" Id. (quoting Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 730 (1984)); see also Estate of Kunze v. Commissioner, ___ F.3d ___ (7th Cir., Nov. 16, 2000), affg. T.C. Memo. 1999-344; DeMartino v. Commissioner, 862 F.2d 400 (2d Cir. 1988), affg. 88 T.C. 583 (1987).

In determining whether the retroactive application of an income tax statute violates the Due Process Clause, we examine whether "the nature of the tax and the circumstances in which it is laid * * * is so harsh and oppressive as to transgress the constitutional limitation." Welch v. Henry, supra at 147. This "harsh and oppressive" standard "does not differ from the prohibition against arbitrary and irrational legislation" that applies generally to economic legislation. Pension Benefit Guaranty Corp. v. R.A. Gray & Co., supra at 733.

Courts have held retroactive tax amendments unconstitutional only in those cases where the amendment imposes "a wholly new tax, which could not reasonably have been anticipated by the taxpayer at the time of the transaction." Wiggins v. Commissioner, 904 F.2d 311, 314 (5th Cir. 1990), affg. 92 T.C. 869 (1989); see also Blodgett v. Holden, 275 U.S. 142 (1927); Nichols v. Coolidge, 274 U.S. 531 (1927); Untermyer v. Anderson, 276 U.S. 440 (1928). On the other hand, courts have held that Congress acts rationally when it cures "what it reasonably viewed as a mistake". United States v.

Carlton, supra at 32. Where legislation is "curative", courts liberally construe the retroactive application of the law. See, e.g., Temple University v. United States, 769 F.2d 126, 134 (3d Cir. 1985).

We do not believe the 1998 amendment is a "wholly new tax". To the contrary, it serves primarily as clarification to existing law, as opposed to a change of existing law. It was a curative measure that did not impose new tax liabilities or alter the substantive rights of the parties. Congress' purpose in enacting the 1998 amendment was rationally related to the legitimate Government purpose of ensuring that only the most needy individuals receive the earned income credit.[5] See id.

Congress originally enacted the earned income credit legislation to provide economic assistance to low-income working taxpayers. See S. Rept. 94-36, at 11 (1975), 1975-1 C.B. 590, 595. The program's objectives included: (1) Offsetting social security payments made by low-income workers; (2) providing a work incentive for individuals who receive welfare benefits; (3) providing low-income families with income security; and (4) attempting to "redress the effects of regressive federal tax proposals." 136 Cong. Rec. S15632, S15684-S15685 (daily ed. Oct. 18, 1990) (Explanatory

---

[5] This case involves the disallowance of a credit, which provides further support to the constitutionality of the 1998 amendment. See, e.g., Fife v. Commissioner, 82 T.C. 1 (1984) (Tax Court upheld the constitutionality of a retroactive amendment to the investment tax credit provisions).

Material Concerning Committee on Finance 1990 Reconciliation Statement).

To achieve these objectives, Congress determined which individuals are most appropriate to receive the earned income credit. Before 1990, section 32 generally defined an eligible individual as one who was (1) married and was entitled to a dependency exemption under section 151 for a child, (2) a surviving spouse, or (3) a head of household. See sec. 32(c)(1). In 1990, Congress amended the definition of an eligible individual, eliminating the language set forth above, but including in the definition an individual who has a qualifying child. See OBRA sec. 11111(a). A qualifying child was defined as one who satisfies "a relationship test, a residency test, and an age test." H. Conf. Rept. 101-964, at 1037 (1990), 1991-2 C.B. 560, 564. Congress noted:

> Solely for purposes of the EITC [earned income tax credit], taxpayers are required to obtain and supply a taxpayer identification number (TIN) for each qualifying child who has attained the age of 1 as of the close of the taxable year of the taxpayer.
>
> In order to claim the EITC, the taxpayer must complete and attach a separate schedule to his or her income tax return. In addition to the TIN requirement discussed above, this schedule is required to include the name and age of any qualifying children.

Id. at 1038, 1991-2 B.C. at 565.

In response to this Court's holding in Lestrange v. Commissioner, T.C. Memo. 1997-428 (that before the enactment of the

1998 amendment, the identification requirement was included within the definition of a qualifying child), Congress enacted the 1998 amendment, reflecting its intent that the identification of the child not be an element of the definition of a qualifying child. This correction, in turn, made the tie-breaker rule apply not only in the case of two or more individuals actually claiming the credit with respect to the same child, but also in any case where two or more individuals could claim the credit with respect to the same child.

As the Joint Committee on Taxation explained:

### Tie-breaker rule

If more than one taxpayer would be treated as an eligible individual with respect to the same qualifying child for a taxable year only the individual with the highest modified adjusted gross income ("modified AGI") is treated as an eligible individual with respect to that child. * * *

Historically, the Internal Revenue Service ("IRS") has interpreted this tie-breaker rule to deny the EIC to other taxpayers meeting the definition of eligible individual regardless of whether the taxpayer with the highest modified AGI had claimed the EIC with respect to the child on the taxpayer's tax return. The Tax Court in Lestrange v. Commissioner, T.C.M. 1997-428 (1997) held that the tie-breaker rule does not apply to deny the EIC to a taxpayer unless another taxpayer actually claimed the EIC with respect to the child on the taxpayer's return. The Tax Court decision hinged on the determination that the child was not a qualifying child with respect to the taxpayer with the highest modified AGI because the identification test was not met by that taxpayer with respect to the child. Under this view, because the taxpayer with the highest modified AGI did not satisfy the qualifying child requirement, there was not more than one eligible individual and the tie-breaker rule did not apply.

Description of Proposal

The proposal clarifies that the identification requirement is a requirement for claiming the EIC [earned income credit], rather than an element of the definition of "qualifying child".  Thus, the tie-breaker rule would apply where more than one individual otherwise could claim the same child as a qualifying child on their respective tax returns, regardless of whether the child is listed on any tax return. * * *

        *       *       *       *       *       *       *

Analysis

Proponents of the clarification believe that it is necessary to provide the EIC efficiently and appropriately. * * * They continue that the tie-breaker is necessary in all cases where more than one taxpayer could claim the same qualifying child, to ensure that only needy taxpayers receive the EIC.  For example, a taxpayer with a qualifying child should not qualify for the EIC if that taxpayer is sharing a household with the taxpayer's own higher-income parent. To allow these taxpayers to essentially elect out of the tie-breaker rule by failing to claim the child on the return of the higher-income parent would undermine Congressional intent with regards to the EIC.

Staff of Joint Comm. on Taxation, Description of Revenue Provisions Contained in the President's Fiscal Year 1999 Budget Proposal, at 217 (J. Comm. Print 1998).  Thus, Congress was concerned that before the 1998 amendment, taxpayers could structure their income tax returns so that they would receive the earned income credit when they would not have otherwise been eligible.

The legislative history of the 1998 amendment supports our conclusion that respondent properly applied this amendment.  The 1998 amendment is rationally related to a legitimate legislative

purpose of providing the earned income credit to the <u>most</u> appropriate individuals. See, e.g., <u>Fein v. United States</u>, 730 F.2d 1211, 1212 (8th Cir. 1984) (retroactive taxes are rational because taxpayers otherwise could "order their affairs freely to avoid the effect of the change").

Petitioner contends that should we apply the 1998 amendment to deny her entitlement to the earned income credit (which we do), harsh and oppressive results would ensue to her. We disagree. The earned income credit is a governmental subsidy aimed at providing assistance to low-income taxpayers. Congress' clarification of the eligibility requirements to continue to provide the credit to the most appropriate recipients is not the "harsh and oppressive" result that would require us to strike down the amendment as unconstitutional. Thus, petitioner has failed to convince us that the denial of the earned income credit in this case is "so harsh and oppressive" as to necessitate a finding that the retroactive application of the 1998 amendment violates the due process clause of the Constitution.

In determining whether a retroactive amendment is constitutional, we must further consider the length of the period affected by the amendment. See <u>United States v. Carlton</u>, 512 U.S. at 32-33; <u>Canisius College v. United States</u>, 799 F.2d 18, 26 (2d Cir. 1986). Congress frequently enacts tax legislation with an effective date prior to the actual date of the enactment. See

United States v. Darusmont, 449 U.S. at 296. "This 'customary congressional practice' generally has been 'confined to short and limited periods required by the practicalities of producing national legislation.'" United States v. Carlton, supra at 32-33 (quoting United States v. Darusmont, supra at 296-297). The retroactive period generally must be "modest" and not excessive. See United States v. Carlton, supra; see also United States v. Hemme, 476 U.S. 558, 562 (1986). Nevertheless, neither the Supreme Court nor the Courts of Appeals have applied "an absolute temporal limitation" on the periods affected by retroactive legislation for the legislation to withstand a constitutional challenge. See Temple University v. United States, 769 F.2d at 135. "There is nothing intrinsic in the 'harsh and oppressive' test * * * that requires a one-year bench mark as the constitutional limit of retroactivity." Canisius College v. United States, supra at 26; see also Wiggins v. Commissioner, 904 F.2d at 316. Instead, we review tax legislation case by case, considering "'the nature of the tax and the circumstances in which it is laid'". Canisius College v. United States, supra at 27 (quoting Welch v. Henry, 305 U.S. at 147).

Generally, in those cases where retroactive application was allowed, courts have found the period of retroactivity to be modest. See, e.g., United States v. Carlton, supra (upholding 14-month retroactive application); United States v. Darusmont, supra (upholding retroactive application within calendar year of 10

months); <u>United States v. Hudson</u>, 299 U.S. 498 (1937) (upholding 1-month retroactive application); <u>Quarty v. United States</u>, 170 F.3d 961 (9th Cir. 1999) (upholding 8-month retroactive application); <u>Kitt v. United States</u>, ___ Fed. Cl. ___ (Oct. 6, 2000) (upholding 1-year retroactive application); <u>NationsBank v. United States</u>, 44 Fed. Cl. 661, 666 (1999) (upholding 5-month retroactive application). In other instances, even a period of several years has passed muster. See, e.g., <u>Licari v. Commissioner</u>, 946 F.2d 690 (9th Cir. 1991) (upholding application of tax penalty passed in 1986 to returns filed between 1982 and 1984), affg. T.C. Memo. 1990-4; <u>Canisius College v. United States</u>, <u>supra</u> (upholding 4-year retroactive application); <u>Temple University v. United States</u>, <u>supra</u> at 134-135 (upholding 4-year retroactive application); <u>Rocanova v. United States</u>, 955 F. Supp. 27 (S.D.N.Y. 1996) (upholding retroactive application of amendment extending statute of limitations on tax collection actions from 6 to 10 years), affd. per curiam 109 F.3d 127 (2d Cir. 1997).

Clearly, some retroactivity is necessary as a practical matter. Petitioner disputes the application of this amendment to her 1997 tax year, approximately a 1-year period. The 1-year period of retroactivity as applicable to petitioner is reasonable, is within precedential limits, and lends support to the constitutionality of the 1998 amendment.

Finally, in determining whether a retroactive amendment is constitutional, we may consider whether the retroactive legislation "abrogates vested rights" of the taxpayer, and whether the taxpayer relied to his or her detriment on the law prior to the amendment, so that had the taxpayer known of the legislative changes, he or she could have avoided the tax imposed by the amendment.  See, e.g., Rocanova v. United States, supra at 30.  We dismiss petitioner's argument that the 1998 amendment violates due process because she detrimentally relied upon the preamendment version of section 32(c)(3)(A).[6]  The 1998 amendment does not abrogate petitioner's rights.  As the Supreme Court explained in United States v. Carlton, supra at 33:  "[a taxpayer's] reliance alone is insufficient to establish a constitutional violation.  Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code."  Moreover:

> Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract.  It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens.  Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process * * *.

Welch v. Henry, supra at 146-147.

---

[6]     We note that before 1998, the Internal Revenue Service had consistently applied sec. 32(c)(1)(C) without considering whether the taxpayer with the highest modified adjusted gross income identified the qualifying child on his or her return.  See IRS Publication 596, Earned Income Credit (1991-1999).

In sum, we hold that the retroactive application of the 1998 amendment does not deny petitioner due process of the law; thus, it is constitutional.

In reaching our conclusions, we have considered all of petitioner's arguments (namely, whether: (1) The doctrine of estoppel applies; (2) the duty of consistency owed to petitioner was violated; and (3) events that occurred before the issuance of the notice of deficiency may be considered) for a result contrary to that expressed herein, and to the extent not discussed above, find them to be without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.