T.C. Summary Opinion 2001-162

UNITED STATES TAX COURT

PRINCESS STEPHAN OBRIOT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5465-00S.                    Filed October 11, 2001.

Princess Stephan Obriot, pro se.

<u>Ross M. Greenberg</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the years in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $2,626.50 and $2,048 in petitioner's Federal income taxes for the tax years 1997 and 1998, respectively. The issues for decision are: (1) Whether petitioner is entitled to dependency exemption deductions; (2) whether petitioner is entitled to the head-of-household filing status; (3) whether petitioner is entitled to child care credits; and (4) whether petitioner is entitled to earned income credits.

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Port Richey, Florida, at the time that she filed her petition. For clarity and convenience, we have combined our findings of fact and discussions of pertinent legal issues.

During the years in issue petitioner worked as a laborer building concert stages. Petitioner has a daughter, Ayla Olsen (Ayla), who was born in 1994. Petitioner was not married during the years in issue. During 1997 and 1998, petitioner and Ayla lived with petitioner's parents, Peter and Katherine Stephan (the Stephans).

Petitioner reported $15,647 and $18,383 in adjusted gross income on her Federal income tax returns for 1997 and 1998, respectively.

For 1997 and 1998 petitioner reported her filing status as head-of-household. Petitioner claimed a dependency exemption

deduction for Ayla, a child care expense credit, and an earned income credit for each of the tax years 1997 and 1998.

Respondent issued a notice of deficiency for each of the years 1997 and 1998. Respondent disallowed the claimed dependency exemption deduction for each of the tax years on the basis that petitioner failed to establish that she provided more than one-half of Ayla's support. Respondent disallowed the claimed head-of-household filing status on the basis that petitioner failed to establish that she paid more than one-half of the household expenses. Respondent disallowed petitioner's child care credit for each of the years in issue because petitioner failed to establish that she maintained a household and failed to substantiate the amounts paid.[1] Finally, respondent disallowed petitioner's earned income credit for each of the years in issue on the ground that the Stephans' modified adjusted gross income was higher than petitioner's in both 1997 and 1998.

The first issue for our consideration is whether petitioner is entitled to a dependency exemption deduction for Ayla for each of the years in issue. A taxpayer is allowed a deduction for a dependent, such as a daughter, for whom the taxpayer has provided over one-half of her support. Secs. 151(a), (c), and 152(a).

---

[1] Respondent conceded that petitioner substantiated payments for child care in the amounts of $901 for 1997 and $275 for 1998.

The term "support" includes food, shelter, clothing, medical care and dental care, education, child care, and the like. <u>Lustig v. Commissioner</u>, 274 F.2d 448 (9th Cir. 1960) (allowing child care expense to be factored into determination of whether taxpayer contributed more than one-half of the support of a claimed dependent), affg. 30 T.C. 926 (1958); sec. 1.152-1(a)(2)(i), Income Tax Regs.

To determine whether a taxpayer has provided more than one-half of the support of an individual, the entire amount of support which the individual received from the taxpayer is compared to the entire amount of support which the individual received from all sources. Sec. 1.152-1(a)(2)(i), Income Tax Regs.

We thus compare the entire amount expended for Ayla's support to the amount provided by petitioner. From a review of the record, we conclude that the amounts expended as support for Ayla and the amounts provided by petitioner are as follows:

<u>1997</u>

|  | Total Support for Ayla | Support From Petitioner |
|---|---|---|
| Rent | $1,425 | $0 |
| Utilities | 348 | 348 |
| Food | 1,800 | 1,800 |
| Clothing, medical, etc. | 800 | 800 |
| Child care | 3,900 | 1,195 |
| Total | 8,273 | 4,143 |

### 1998

|  | Total Support for Ayla | Support From Petitioner |
|---|---|---|
| Rent | $1,425 | $0 |
| Utilities | 396 | 396 |
| Food | 1,800 | 1,800 |
| Clothing, medical, etc. | 800 | 800 |
| Child care | 4,040 | 1,770 |
| Total | 8,461 | 4,766 |

We briefly explain our conclusions below. During 1997 and 1998, petitioner and Ayla lived in the house belonging to the Stephans in Jonesboro, Georgia. Petitioner occupied the partially completed basement, and Ayla occupied one of the three bedrooms. Petitioner, Ayla, and the Stephans shared use of the kitchen and family room.

The amount expended for Ayla includes one quarter of the rental value of the house in which she lived. See Reed v. Commissioner, T.C. Memo. 1980-333. Based on the record we conclude that the fair rental value was $475 per month, or $5,700 per year. The portion expended for Ayla is $1,425 for each year. Petitioner did not pay rent on the allocable portion of the fair market rental value of the house that she and Ayla occupied.

One quarter of the total water, gas, and electricity bills (utility bills) is allocable to Ayla's support. Id. We conclude the total utility costs of the household were $1,392 in 1997 and $1,583 in 1998. Ayla's allocable share of utility costs was $348

and $396 for 1997 and 1998, respectively.  Petitioner gave the Stephans money each month for utilities.  The Stephans paid the utility bills from a combination of petitioner's contributions and their own funds.  We are satisfied that the amount expended by petitioner for utilities exceeded Ayla's allocable share.

Petitioner purchased all of the groceries for herself and Ayla.  The total amount of support for Ayla includes one-half of the amount spent by petitioner on food.  We conclude that the amount expended for Ayla's support was $1,800 in each of 1997 and 1998.

Petitioner paid for all of Ayla's additional expenses including Ayla's medical expenses that were not covered by Medicare, dental care, and clothes.  The amounts petitioner spent on these items are included in the amount of support for Ayla. The Medicare benefits that Ayla received are not included in the entire amount of her support. Turecamo v. Commissioner, 554 F.2d 564 (2d Cir. 1977), affg. 64 T.C. 720 (1975); Rev. Rul. 79-173, 1979-1 C.B. 86.  We conclude that the amount of additional expenses for Ayla was $800 in each of 1997 and 1998.

Petitioner paid for Ayla to attend two day care centers, one of which was subsidized.  The amounts spent on Ayla's day care centers, including the subsidies, are included in the entire amount of Ayla's support; however, the subsidies are not treated as contributions made by petitioner.  Cf. Donner v. Commissioner,

25 T.C. 1043 (1956) (determining that tuition paid by the State for child care was not treated as paid by taxpayer parents); Turecamo v. Commissioner, supra.

We conclude that petitioner provided over one-half of Ayla's support in 1997 and 1998. Accordingly, petitioner is entitled to the dependency exemption deduction for both 1997 and 1998.

The next issue is whether petitioner is entitled to head-of-household filing status. In order to qualify for head-of-household filing status, petitioner must satisfy the requirements of section 2(b). Under section 2(b), an unmarried person may claim head-of-household status if the taxpayer maintains as her home a household which constitutes the principal place of abode of, inter alia, a daughter of the taxpayer for more than one-half of such taxable year. A taxpayer is considered the head of a household if she is not married, not a surviving spouse, and if, among other choices, she maintains as her home a household which constitutes the principal place of abode of an individual, including a daughter of the taxpayer. Sec. 1.2-2(b)(1), (3), Income Tax Regs.

Maintaining a household requires paying more than one-half of the expenses of the household for the taxable year. Sec. 1.2-2(d), Income Tax Regs. Expenses include property taxes, mortgage interest, rent, utility charges, upkeep and repairs, property insurance, and food consumed on the premises, but do not include

items such as clothing, education, and medical treatment.  Sec. 1.2-2(d), Income Tax. Regs.

We found petitioner and Mr. Stephan to be credible and forthright witnesses.  Based on all the evidence, we conclude that petitioner paid more than one-half of the expenses for her household.  Accordingly, petitioner qualifies for the head-of-household filing status for 1997 and 1998.

The next issue for decision is whether petitioner is entitled to child care credits for 1997 and 1998.  Under section 21(a)(1), a taxpayer who maintains a household may receive as a credit a certain percentage of employment-related expenses for a qualifying individual.  A qualifying individual includes a child under the age of 13 who is a dependent of the taxpayer under section 152 for the purpose of the section 151(c) dependency exemption deduction.  Sec. 21(b)(1)(A).

Employment-related expenses are those incurred to care for a qualifying individual, but only if they are incurred to enable the taxpayer to be gainfully employed.  Sec. 21(b)(2)(A)(ii). These expenses include child care services, such as nursery school.  Sec. 1.44A-1(c)(3)(i), Income Tax Regs.[2]

As previously indicated, petitioner provided more than one-half of the cost of maintaining the household.  Petitioner's

---

[2]  Sec. 44A was redesignated as sec. 21 for tax years beginning after Dec. 31, 1983, pursuant to sec. 471(c)(1) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 826.

child care costs were incurred to care for Ayla, her qualifying child, while petitioner worked. As previously indicated, Ayla qualifies as petitioner's dependent for 1997 and 1998. As a result, petitioner is entitled to the full child care credits for 1997 and 1998.

The final issue for decision is whether petitioner is entitled to earned income credits (EIC) for 1997 and 1998. Under section 32(a), a taxpayer may be allowed an EIC if she is an eligible individual. An eligible individual includes one who has a qualifying child for the taxable year. Sec. 32(c)(1)(A)(i). Under section 32(c)(3)(B) a qualifying child includes a daughter of the taxpayer or a descendant of a daughter. The qualifying child must have the same principal place of abode as the taxpayer for more than one-half of the tax year, under section 32(c)(3)(A)(ii), and the child must not have attained the age of 19, under section 32(c)(3)(C)(i).

Additionally, in order to receive the EIC, the taxpayer must have identified the child on her return under the identification rule of section 32(c)(3)(D), but need not have so identified the child to be an eligible individual with respect to that qualifying child. The identification rule under section 32(c)(3)(D) is effective for both 1997 and 1998.[3]

---

[3] We previously discussed the identification rule and the constitutionality of its retroactive amendment in Sutherland v.

(continued...)

Under section 32(c)(1)(C), the so-called tie breaker rule, if there are two or more eligible individuals who could receive the EIC with respect to that qualifying child, only the individual with the highest modified adjusted gross income for such taxable years shall be treated as the eligible individual with respect to the qualifying child. Sutherland v. Commissioner, T.C. Memo. 2001-8; Jackson v. Commissioner, T.C. Memo. 1996-54.

Ayla had the same principal place of abode as both petitioner and the Stephans for more than one-half of 1997 and 1998. Ayla is petitioner's daughter, and she is also a descendant of the Stephans' daughter. Ayla had not attained 19 by the close of either 1997 or 1998. Ayla could be a qualifying child for either petitioner or the Stephans, and either petitioner or the Stephans could be the qualifying individual or individuals. The Stephans, filing jointly, reported gross income in the amount of $60,485 for 1997 and $69,537 for 1998. The Stephans' modified adjusted gross income for both 1997 and 1998 was higher than petitioner's. Accordingly, upon the application of the tie breaker rule, the Stephans are treated as

----

³(...continued)
Commissioner, T.C. Memo. 2001-8. Also, we discussed the issue as specific to petitioner for the taxable years 1995 and 1996 in another summary opinion.

the eligible individuals with respect to Ayla under section 32(c)(1)(C).

Whether the Stephans identified Ayla as a qualifying child and elected the EIC on their income tax returns for 1997 and 1998 is not relevant to the determination of who the eligible individual is with respect to Ayla. Merely their qualification as eligible individuals with respect to Ayla under section 32(c)(1)(C) is sufficient to deny petitioner the EIC for 1997 and 1998.

Respondent is sustained on this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

under Rule 155.